USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________________
DATE FILED: September 9, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

UNITED STATES OF AMERICA

-against-

ANDY GYAMFI, ERIC OPOKU, and KEVIN AYAYEE

Defendants.

---------------------------------------------------------------X

14 Cr. 157 (PAC)

MEMORANDUM & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendants Eric Opoku and Kevin Ayayee move to suppress physical evidence seized during their arrests and evidence found during subsequent searches of their cellular phones. Defendant Ayayee also moves to suppress statements that he made to law enforcement authorities after his arrest, and Defendant Opoku seeks an order directing the Government to provide him a bill of particulars. For the reasons discussed below, the motions are denied.

**BACKGROUND**

On January 16, 2014, Frantz Ostine entered a local precinct of the New York City Police Department and reported as fact the following events: on January 14, 2014, two men had approached Mr. Ostine, robbed him at gunpoint, and instructed him to do as he was told in the future or else he would be killed.[1] On January 15, Mr. Ostine received a call on his cellular phone from one of the men, who informed Mr. Ostine that he would pick Mr. Ostine up at his apartment so that Mr. Ostine could cash some checks. Later on January 15, Mr. Ostine received

[1] The federal complaint and warrant affidavit state that two men robbed Mr. Ostine on January 14, 2014, but the state court warrant affidavit indicates that Mr. Ostine was robbed by one man.

another call from the same man, who instructed Mr. Ostine to come to the front of Mr. Ostine's apartment building. The man arrived outside Mr. Ostine's building in a van with three other men. The men drove Mr. Ostine to three different bank branches, where they ordered Mr. Ostine to deposit money into his bank account and to cash checks that they had given him. One of the men also took Mr. Ostine's ATM card and withdrew money from Mr. Ostine's account. The men then drove Mr. Ostine back to his apartment. On the morning of January 16, 2014, Mr. Ostine received another call from the same telephone number. The caller stated that he would pick Mr. Ostine up at his apartment later that day to cash additional checks. After receiving this call, Mr. Ostine decided to go to the police.

Mr. Ostine recounted these incidents to NYPD Detective Bernard Solomon. He also showed Detective Solomon a text message that he had received on the evening of January 14 from the phone number of the man who had robbed him (the "Phone Number"). During his interview of Mr. Ostine, Detective Solomon observed the Phone Number repeatedly calling Mr. Ostine's cellular phone. Detective Solomon then accompanied Mr. Ostine to his apartment building where they waited in an unmarked vehicle. As they waited, Mr. Ostine received another call from the Phone Number. The caller stated that he would be pulling up in front of Mr. Ostine's building in a white van. Detective Solomon then observed a white van pull up and stop in front of Mr. Ostine's building in a "No Parking" area.

Detective Solomon and other NYPD officers approached the white van and asked the occupants, Defendants Opoku and Ayayee, to step outside. When they were searched, the police found three blank checks in Defendant Ayayee's pocket. The Defendants were then arrested. During the arrest, a cellular phone and approximately $400 in cash were seized from each Defendant. Immediately after the arrest, Detective Solomon noticed that Defendant Ayayee's

cellular phone screen, which automatically lit up and displayed incoming calls, indicated repeated incoming calls from the Phone Number. Both Defendants subsequently waived their *Miranda* rights and made statements to the police.

Detective Solomon obtained a search warrant in Bronx County Supreme Court for both Defendants' phones on January 17, 2014, and on February 10, 2014, swore out a federal complaint. On March 6, 2014, a second search warrant was obtained in the Southern District of New York for Defendant Ayayee's phone, and a federal indictment was filed.

## DISCUSSION

### I. Motion to Suppress Physical Evidence and Statements

Probable cause exists for an arrest if "the totality of the circumstances, as viewed by a reasonable and prudent police officer in light of his training and experience, would lead that police officer to believe that a criminal offense has been or is being committed." *United States v. Moreno*, 897 F.2d 26, 31 (2d Cir. 1990) (citation omitted). If an officer has probable cause to arrest a defendant, the officer may also perform a search incident to the arrest to "ensure [the officer's] safety and safeguard evidence." *Virginia v. Moore*, 553 U.S. 164, 176 (2008).

There was probable cause for the Defendants' arrests. Mr. Ostine provided Detective Solomon a specific and detailed account of being robbed and forced to cash checks using his bank account.[2] Mr. Ostine identified the phone number that the suspects had used to contact him, and Detective Solomon observed that phone number call Mr. Ostine's phone multiple times. Mr. Ostine then received a call from that same number stating that the suspects would be arriving at a specific location and in a specific type of vehicle. Following this telephone

[2] Defendants argue that Mr. Ostine's account of the events is not credible; however, such credibility determinations are properly made by a jury at trial.

call, Detective Solomon observed a vehicle matching the caller's description pull up in the specified location. All of this was happening in real time; and based on the totality of the circumstances, there was ample probable cause for the arrests. Furthermore, because the arrests were based on probable cause, the police were permitted to search the Defendants, to seize the checks from Defendant Ayayee's pocket and the Defendants' cash and cellular phones, and to obtain statements from the Defendants. *See Moore*, 553 U.S. at 176. Accordingly, the motions to suppress physical evidence seized during the arrest and Defendant Ayayee's subsequent statements to law enforcement officials are denied.

## II. Motion to Suppress Evidence Obtained from Defendants' Cellular Phones

To determine whether probable cause exists for a warrant, the issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An issuing judge's determination of probable cause is entitled to "great deference by reviewing courts." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (citation omitted). The reviewing court merely ensures that the issuing judge "had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238 (citation omitted).

The warrants to search Defendants' cell phones were valid and supported by probable cause. The affidavits underlying the warrants set forth in detail the facts leading up to Defendants' arrests.[3] The affidavits also described the manner in which cellular phones were believed to have been used during the commission of the alleged crimes. In particular, the

[3] In addition, the affidavits stated that following the Defendants' arrests, Detective Solomon determined that the blank checks found in Defendant Ayayee's pocket were forged.

affidavits stated that Mr. Ostine received repeated telephone calls from the Phone Number and that Defendant Ayayee later received repeated telephone calls from that same number. The issuing judge could therefore conclude that a fair probability existed that the Defendants used their phones during the commission of the crimes and that, as a result, their phones contained evidence of the crimes. Furthermore, the warrants clearly identified the crimes for which the search was being undertaken and set forth the categories of information to be searched. *See United States v. Young*, 745 F.2d 733, 759 (2d Cir. 1984).

In addition to challenging the validity of the warrant, Defendant Ayayee argues that Detective Solomon impermissibly searched his phone without a warrant when he observed the incoming calls that appeared on the screen of Defendant Ayayee's phone. This argument must be rejected. Detective Solomon did not search the phone, but rather observed the originating number which was in plain view. Under the plain view doctrine, if "police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Defendant Ayayee's phone was lawfully seized and Detective Solomon had a right of access to it. Detective Solomon did not manipulate the phone or otherwise try to access any information. Rather, he simply observed the number that automatically appeared on the face of the phone, and recognized the Phone Number. *See United States v. Wurie*, 728 F.3d 1, 3 n.1 (1st Cir. 2013) (noting that defendant "concedes that, under the plain view exception . . . the officers were entitled to take notice of any information that was visible to them on the outside of the phone and on its screen (including . . . the incoming calls from 'my house')"), *aff'd*, *United States v. Wurie*, 134 S. Ct. 2473 (2014).

In any event, even if the warrants lacked probable cause or were technically deficient, the

good faith exception would be applicable. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984). That exception provides that "[e]vidence seized pursuant to a warrant is admissible even if the warrant lacks probable cause or is technically deficient if the executing officers relied upon it in objective good faith." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citation omitted). The good faith exception does not apply "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Id.* Defendants have failed to demonstrate the existence of any of these circumstances.

**III. Motion for a Bill of Particulars**

Defendant Opoku argues that he is entitled to a bill of particulars because the indictment does not specify whether Defendant Opoku "was a participant in the January 15th kidnapping." Opoku Mtn. 7.

A bill of particulars is required "only where the charges of an indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (citation omitted). A bill of particulars is not necessary if "the government has made sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

Here, the indictment contains specific information regarding the charges against Defendant Opoku, including the dates, locations, and substance of the alleged crimes. In addition, the Government has represented that it intends to take the position that Defendant Opoku was present for the January 15, 2014 kidnapping. Opp. Mtn. 12. Accordingly, a bill of

particulars is not required.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to suppress evidence and statements and for a bill of particulars are DENIED.

Dated: New York, New York
September 9, 2014

SO ORDERED

PAUL A. CROTTY
United States District Judge